**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**TAMMY STITZ,**
**o/b/o S.E.S. (minor child),**

    **Plaintiff,**

v.                                                                                                  Case No.:  8:05-CV-2375-T-23EAJ

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**

    **Defendant.**
    _____/

**REPORT & RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Codes, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying a claim for Supplemental Security Income ("SSI") on her child's behalf ("Claimant") under the Act.[2]

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Therefore, pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The district judge has referred this matter to the undersigned for consideration and a report and recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

applicable legal standards. See 42 U.S.C. § 405(g) (2003). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979) (citations omitted).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

In a child's SSI case, there is a three-step sequential process for determining whether the child is disabled. 20 C.F.R. § 416.924(a)-(d). The first step is determining whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, then the second step is to determine whether the child's impairment is "severe" within the meaning of the regulations. 20 C.F.R. § 416.924(c). This step requires analysis of whether the impairment is more than just "a slight abnormality or combination of slight abnormalities that causes no more than minimal functional limitations." Id. If the impairment does not cause more than minimal functional limitations, then the impairment is not "severe" and the child is not disabled. Id. Finally, the third step requires analysis of whether the impairment meets, medically equals, or functionally equals in severity a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d).

2

If the child's impairment or combination of impairments does not meet or medically equal any listed impairment, the examiner determines whether the impairment functionally equals a listing by evaluating the child's six domains of functioning. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1). If the child has extreme limitations in one of the broad areas of development or functioning, or marked limitations in two of such areas of development or functioning, a finding of functional equivalence will be made. 20 C.F.R. § 416.926a(a). Thus, if the child is not engaged in substantial gainful activity, has a severe impairment,

and the child's impairment meets or functionally equals a listing, then the child will be considered disabled and entitled to SSI benefits. 20 C.F.R. § 416.924(b)-(d).

## I.

Plaintiff filed her application for SSI benefits on behalf of Claimant, a child under the age of 18, on September 14, 1994, alleging a disability onset date of June 1, 1993. (T 89-92) Plaintiff alleges that Claimant is disabled due to attention-deficit hyperactivity disorder ("ADHD") and a history of "fever" seizures. (T 109-112) Plaintiff's application was denied initially, upon reconsideration, and by the ALJ in a decision dated August 27, 1997. (T 370-78) Claimant was eight years old at the time of the decision. (T 372)

The Appeals Council granted Plaintiff's request for review and vacated the ALJ's decision, remanding the case to the ALJ for further proceedings. (T 384-86) Following a hearing on August 25, 1999, the ALJ sent interrogatories to Kirti M. Pandya, M.D. ("Dr. Pandya"), a non-treating, non-

3

examining reviewing physician. In a decision issued January 17, 2001 denying benefits, the ALJ gave great weight to Dr. Pandya's opinion. (T 458-67) The Appeals Council again granted Plaintiff's request for review, vacated the hearing decision, and remanded the case to the ALJ for further proceedings. (T 450-52) Specifically, the Appeals Council remanded the case to allow Plaintiff an opportunity to respond to the interrogatory answers submitted by Dr. Pandya. (T 451)

At a subsequent hearing before the ALJ on July 14, 2003, Plaintiff's attorney requested a "closed period" of disability because Claimant's condition had improved dramatically since October 1998. (T 85-87) Following the hearing, the ALJ denied Plaintiff's application for benefits in a decision dated September 26, 2003. (T 22-28) At the time of the decision, Claimant was fourteen years old and enrolled in the sixth grade. (T 23) On November 1, 2005, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. In denying benefits, the ALJ found that Claimant was not eligible for SSI payments because he was not disabled at any time through the ALJ's decision on September 26, 2003. (T 28) Plaintiff filed a timely petition for judicial review of the Commissioner's denial of benefits. Plaintiff has exhausted all administrative remedies and the Commissioner's decision is ripe for review under the Act.

Following the administrative hearing, the ALJ found that Claimant suffered from ADHD and oppositional defiant disorder. (T 26, 28) The ALJ determined that the above impairments are severe; however, the ALJ concluded that the limitations resulting from the effects of Claimant's impairments do not meet, medically equal, or functionally equal an impairment listed in the Listing of Impairments found in Appendix 1, Subpart P of Regulations No. 4. (T 28) Specifically, the ALJ held that Claimant does not have a combination of medically determinable physical or mental impairments that result in marked or severe functional limitations. (Id.) In reaching the conclusion

that Claimant is not disabled as defined by the Act, the ALJ found that the allegations regarding Claimant's impairments were not wholly credible. (Id.)

The medical evidence has been discussed in the ALJ's opinion and will not be repeated here except where as necessary to address the issues presented.

## II.

The issue Plaintiff presents on appeal is whether the ALJ erred in evaluating the evidence regarding the effect of Claimant's impairments on the six domains of functioning, which are analytical standards for measuring whether an impairment is the functional equivalent of a listed impairment. Social Security regulations allow for a finding of functional equivalence to a listed impairment if the condition results in "marked" limitations of two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).[3] The six domains of functioning are: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi) (referred to as domains one through six).

The ALJ concluded that Claimant's condition did not meet this test because there was no "extreme" limitation in one domain or two "marked" limitations in two or more domains. (T 27) Specifically, the ALJ found that Claimant had less than marked limitations in acquiring and using

---

[3] A "marked" limitation is one which interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

5

information and relating to others, and no limitations in attending and completing tasks, interacting with others, moving and manipulating objects, caring for himself, and physical well-being. (Id.)

Plaintiff alleges that the ALJ erred in finding that Claimant did not have an extreme limitation in one or a marked limitation in two areas of functioning, and argues that the testimony and supporting evidence reveal at least marked to extreme limitations in attending and completing tasks, interacting and relating to others, and caring for oneself or physical well being (Dkt. 12 at 6-7). Therefore, Plaintiff argues, the ALJ failed to properly analyze the evidence regarding domains two, three, five, and six.

According to Plaintiff, the Commissioner erred in analyzing the evidence in these four domains by: (1) disregarding the opinion of the medical expert who testified that the child's ADHD met listing severity; (2) failing to specify good cause for rejecting the opinions of the claimant's treating physician and improperly crediting the opinions of a non-treating physician; and (3) improperly evaluating the credibility of Plaintiff's testimony (claimant's mother) and the opinion of claimant's teacher, Ellen Tennyson ("Ms. Tennyson") (Dkt. 12 at 6-10).

**A.** Plaintiff claims that the ALJ improperly disregarded, without any basis, the opinion of the medical expert who testified at the hearing that Claimant's ADHD met listing severity (Dkt. 12 at 6). At the August 25, 1999 hearing, Arturo Gonzalez, M.D. ("Dr. Gonzalez"), a non-treating, non-examining reviewing psychiatrist testified that Claimant met Listing 112.11 because of marked inattention, marked impulsiveness, marked impairment in personal/behavior functioning, and marked deficiency of concentration. (T 77-79) The ALJ rejected Dr. Gonzalez' opinion on several bases, including Dr. Gonzalez' own testimony that he does not treat children, nor does he treat patients with ADHD, Claimant's impairment. (T 24, 75, 463) The ALJ further rejected Dr.

Gonzalez' opinion because Dr. Gonzalez offered no factual basis for his opinion other than it being based on Claimant's mother's testimony. (T 24, 78-79, 463)

It is undisputed that Dr. Gonzalez was not Claimant's treating physician and was called as the court's own medical expert. Contrary to Plaintiff's argument, however, the ALJ did not disregard Dr. Gonzalez' opinion "without any basis." In assessing the medical evidence, the ALJ concluded that Dr. Gonzalez' opinion was entitled to little weight because Dr. Gonzalez could not point to factual evidence in the record to support his conclusion. (T 24, 78-79) Furthermore, in accordance with Social Security Ruling 96-6p, the ALJ gave little weight to Dr. Gonzalez' opinion because Dr. Gonzalez does not treat children or patients with ADHD.[4] (T 24, 75-76) Simply because Dr. Gonzalez stated that Claimant's ADHD met listing severity does not mean Claimant is disabled; the determination of whether an impairment meets listing severity is an issue specifically reserved for the Commissioner. 20 C.F.R. § 416.927(e).

The record shows that the ALJ considered Dr. Gonzalez' opinion regarding Claimant's ADHD; the ALJ discusses Dr. Gonzalez' testimony and subsequent interrogatories submitted after the hearing in both the September 26, 2003 decision and the January 17, 2001 decision. (T 24, 463) In weighing the various medical opinions, the ALJ determined that Dr. Gonzalez' opinion was not consistent with the medical evidence of record. For instance, in subsequent interrogatories submitted after the hearing, Dr. Gonzalez noted that Claimant showed "marked inattention, marked impulsiveness, and marked hyperactivity." (T 398) However, as early as 1993, Rahul Mehra, M.D.

---

[4] At the hearing, Plaintiff's attorney initially objected to Dr. Gonzalez offering testimony, stating that Dr. Gonzalez lacked sufficient qualifications to testify regarding Claimant's ADHD. (T 76) Plaintiff's counsel retracted his objection after Dr. Gonzalez offered testimony that Claimant's ADHD met listing severity. (T 79)

("Dr. Mehra"), Claimant's treating physician at The Harbor Behavioral Health Care Institute ("The Harbor"), noted that Claimant had no hyperactive motor behavior. (T 186, 189, 192, 195, 197, 200) Additionally, in June 1999, Claimant was evaluated by Gerald Hodan, Ph.D. ("Dr. Hodan"), a non-treating consultive psychologist. (T 387-392) Dr. Hodan noted that Claimant "seemed to be able to display adequate attention and concentration." (T 387) Dr. Hodan also stated that "[a]lthough in the past, [Claimant] has been diagnosed with hyperactivity, evidence of these kind of symptoms was not that apparent today . . . [Claimant] seemed to be quite capable of displaying adequate attention, concentration and effort." (T 390-91) In Dr. Hodan's opinion, Claimant displayed no evidence of limitation in the areas of cognitive, motor, personal, and concentration skills, and only less than marked to marked limitations in the area of social functioning. (T 392)

Further, Dr. Gonzalez' opinion was inconsistent with the medical opinion of Kirti J. Pandya, M.D. ("Dr. Pandya"), also a non-examining psychiatrist. Dr. Pandya, a specialist in child psychiatry who has treated over 300 patients with ADHD, concluded that Claimant displayed no evidence of limitation in the areas of cognitive, motor, and personal development skills, while Claimant displayed less than marked functional limitation in the areas of social and concentration skills. (T 437-442) In giving great weight to Dr. Pandya's opinion in the January 17, 2001 decision, the ALJ explained that he credited Dr. Pandya's opinion because it was consistent with the evidence in the record and Dr. Pandya had clinical experience in treating children with ADHD. (T 464) Similarly, in the September 26, 2003 opinion, the ALJ reiterated that Dr. Pandya's opinion was consistent with the medical evidence from Claimant's treating physician, Dr. Mehra. (T 24) On the other hand, Dr. Gonzalez testified that he based his conclusion as to the severity of Claimant's ADHD on the testimony of Claimant's mother at the hearing more than the medical evidence of record. (T 78)

"[T]he ALJ may reject any medical opinion if the evidence supports a contrary finding." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted). It is not for this court to re-weigh the evidence; as long as there is substantial evidence to support the Commissioner's decision it must be affirmed. See Parker v. Bowen, 788 F.2d 1512, 1521-22 (11th Cir. 1986) (en banc). Here, the record reflects that the ALJ considered Dr. Gonzalez' testimony in determining whether Claimant's impairments met listing severity and weighed it accordingly with the other medical evidence of record. Based upon the evidence before the ALJ, he did not err in rejecting Dr. Gonzalez' opinion and gave sufficient reasoning for doing so.

**B.**     Next, Plaintiff contends that the ALJ improperly rejected the opinions of Claimant's treating physician and failed to provide good cause for doing so (Dkt. 12 at 7). Further, Plaintiff claims that the ALJ improperly credited the opinions of non-treating physicians over those of Claimant's treating physicians (Id. at 9).

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982) (citations omitted). The opinion of a treating physician regarding a disability may be discounted if unsupported by objective medical evidence, conclusory, or contrary to the evidence. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991) (citation omitted). The opinions of non-examining, reviewing physicians standing alone do not constitute substantial evidence, and are entitled to little weight when contrary to those of the treating physicians; however, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." Sharfarz, 825 F.2d at 279 (citation omitted). The ALJ must state with particularity the weight he gives to the different medical opinions and the reasons therefor. Id.

9

In a conclusory fashion, Plaintiff argues that "testimony and supporting evidence reveal at least marked to extreme limitations in attending and completing tasks, interacting and relating to others and caring for oneself or physical well being" (Dkt. 12 at 7). Plaintiff further contends that the ALJ used Dr. Pandya's opinion that Claimant displayed less than marked to no evidence of functional limitations to "override the opinion of the treating psychiatrist, the medical expert who testified at the hearing and the consultive psychiatrist who reviewed the file" (Dkt. 12 at 10). While Plaintiff maintains that "all three of those opinions were consistent in terms of the listing level severity of the child's impairments," Plaintiff does not identify the treating psychiatrist and consultive psychiatrist to whom she refers. As the court has already addressed the ALJ's rejection of Dr. Gonzalez' testimony above, the court will not revisit the ALJ's consideration of Dr. Gonzalez' opinion.

Regarding the ALJ's alleged improper rejection of Claimant's treating psychiatrist, Plaintiff cites the medical evidence of Claimant's treating psychiatrist at The Harbor, Raymond Sleszynski, M.D. ("Dr. Sleszynski"), who evaluated Claimant in August 1996 and stated that "attention difficulties, impulsivity significantly impair child's ability to function at home and reports . . . in school academically as well as socially." (T 295) Plaintiff's contentions that the ALJ substituted his opinion for that of the Claimant's treating doctor at The Harbor and that the treating doctor's opinion of Claimant's impairments were consistent in terms of the listing level severity are without merit. Although Dr. Sleszynski did state that attention difficulties and impulsivity significantly impair Claimant's ability to function at home, Dr. Sleszynski specifically found that Claimant had only moderate limitations in the areas of social development and personal/behavioral development, and a marked limitation in the area of concentration, persistence, and pace. (T 292-94) On the evaluation

form Dr. Sleszynski used to evaluate Claimant, there are five areas listed for functional limitations: (1) no evidence of limitation; (2) less than moderate; (3) moderate; (4); marked; and (5) extreme. By determining that Claimant had moderate limitations in two areas, Dr. Sleszynski specifically ruled out that Claimant had "marked" limitations in those areas. Similarly, Dr. Sleszynski did not find any "extreme" limitations in Claimant's functioning areas. The court finds that had Dr. Sleszynski determined that Claimant had "marked" to "extreme" limitations, he would have indicated so on the evaluation form. The fact that Dr. Sleszynski diagnosed Claimant with ADHD is not enough; the record must contain corroborative medical evidence supported by clinical and laboratory findings. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) (citations omitted).

Further, the ALJ did not improperly discount Dr. Sleszynski's evaluation of Claimant. In his January 17, 2001 decision, the ALJ specifically discussed the treatment Claimant received at The Harbor, recounting Claimant's visits with both Drs. Mehra and Sleszynski. (T 459-61) Regarding Dr. Sleszynski's evaluation, the ALJ stated:

> After interviewing the claimant and his mother, [Dr. Sleszynski's] diagnostic impression was attention-deficit hyperactivity disorder, separation anxiety - for the most part resolved, and a history of witnessing abusive behavior. He indicated that the claimant did not exhibit any evidence of limitation with regard to cognitive, communicative, or motor development. However, he found that the claimant had moderate limitation in social and personal/behavioral development as well as marked limitation in concentration. Dr. Sleszynski attributed the claimant's problems to distractibility and peer difficulty secondary to frustration intolerance (Ex. 35).

(T 460) While the ALJ did not specifically mention Dr. Sleszynski by name in the September 26, 2003 opinion, the ALJ did expressly discuss Claimant's treatment at The Harbor, including Dr. Mehra's evaluation and assessments, which were generally consistent with that of Dr. Sleszynski. (T 24-26)

11

Dr. Sleszynski did find that Claimant has marked limitation in the area of concentration, persistence, and pace. (T 294) The ALJ did not adopt this determination, finding that Claimant has less than marked limitation in the area of concentration, persistence, and pace. (T 27) However, the ALJ's failure to adopt Dr. Sleszynski's finding of marked limitation in that one functional area is not reversible error because marked limitation in one functional area is not enough to sustain a finding of equivalence. 20 C.F.R. § 416.926a(a) (marked limitations must be present in at least two of the areas of development or functioning to find functional equivalence).

Furthermore, Plaintiff's contention that the ALJ improperly credited non-treating physicians' opinions over those of Claimant's treating physicians is not supported by the record. In stating that the ALJ used Dr. Pandya's opinion to override the opinion of "consultive psychiatrist who reviewed the file," Plaintiff appears to be referring to Dr. Hodan's evaluation of Claimant, although this is unclear. (T 387-392) Dr. Hodan's diagnostic impression of Claimant was that Claimant had ADHD, combined type, although Dr. Hodan reported that there was no evidence of limitation in the cognitive, motor, personal, and concentration, persistence, or pace areas of functioning. (T 391-92) Dr. Hodan's evaluation is generally consistent with the medical evidence submitted by Drs. Mehra and Sleszynski, Claimant's treating physicians.[5]

Moreover, the ALJ credited the testimony Dr. Pandya without discrediting the opinions of Claimant's treating physicians; in fact, the ALJ stated that Dr. Pandya "did review the medical

---

[5] Without citation from Plaintiff as to whom she is referring, the court presumes that the "consultive psychiatrist who reviewed the file" to whom Plaintiff refers is Dr. Hodan. While the record reveals a November 8, 1994 Childhood Psychiatric Review Technique Form ("PRTF") completed by psychological consultant Arthur H. Hamlin, Psy.D. ("Dr. Hamlin"), Dr. Hamlin indicates on the PRTF that Claimant's impairments are not severe, which is contrary to the ALJ's finding that Claimant's ADHD is severe. (T 131) Thus, it does not seem reasonable that Plaintiff would be referring to Dr. Hamlin's assessment of Claimant.

records and [her] opinion was consistent with the medical evidence from the claimant [sic] treating physician." (T 24) The ALJ also expressly discussed Dr. Pandya's opinion in conjunction with Dr. Mehra's treating notes and other progress notes from The Harbor. (T 24-25) The ALJ utilized the information provided by The Harbor as well as Dr. Pandya and did not discredit the opinions of Claimant's treating physicians; in giving weight to Dr. Pandya's opinion the ALJ found it consistent with those of Claimant's treating physicians. Therefore, the court finds no reversible error in the weight the ALJ assigned to Claimant's treating and consultive physicians' opinions.

**C.** Finally, Plaintiff argues that the ALJ did not properly evaluate the credibility of Plaintiff's testimony at the August 25, 1999 hearing where Plaintiff testified about Claimant's limitations (Dkt. 12 at 8). Additionally, Plaintiff contends that the ALJ improperly disregarded the opinion of Claimant's teacher, Ms. Tennyson (Id. at 10). Defendant does not address Plaintiff's argument regarding the ALJ's consideration of Ms. Tennyson's opinion.

Statements from lay witnesses, including friends and relatives of the claimant, as well as the claimant himself, constitute valid impairment evidence that must be considered. See 20 C.F.R. § 404.1512(b)(3). In addition, it is incumbent on the ALJ to make credibility findings as to a claimant's testimony and any lay witnesses who testify for him. See generally Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985).

Moreover, the credibility of witnesses is for the Commissioner to determine, not the courts. Id. (citation omitted). Similarly, it is the Commissioner's responsibility to draw inferences from the evidence that are supported by substantial evidence. Davis v. Apfel, 93 F. Supp. 2d 1313, 1316 (M.D. Fla. 2000) (citation omitted).

Plaintiff, Claimant's mother, testified at the August 25, 1999 administrative hearing. While she did not testify at the July 14, 2003 administrative hearing, the ALJ's September 26, 2003 decision notes that Plaintiff appeared and testified on behalf of Claimant at the August 25, 1999 hearing. (T 22) The ALJ's January 17, 2001 decision recounts Plaintiff's testimony:

> At the current hearing, the claimant's mother testified that the claimant had been diagnosed with attention-deficit hyperactivity disorder that was characterized by an inability to focus attention and complete tasks, disruptive behavior at school like excessive talking and fighting, difficulty sleeping, banging his head, punching himself, and stabbing the furniture. He had been prescribed medications including Ritalin, Adderall, and Clonidine. Despite these medications, Ms. Stitz reported that the claimant could not focus on a task for more than 5 to 10 minutes. She also reported disrespectful behavior such as hitting and crying spells when he could not get his way. Ms Stitz reported that his disruptive symptoms continued until October 1998 when he was prescribed Wellbutrin. At the time of the current hearing, Ms. Stitz reported that the claimant's symptoms had significantly improved regarding his behavior and sleeping.

(T 462) In explicitly discrediting Plaintiff's testimony, the ALJ stated in the January 17, 2001 opinion:

> The undersigned has considered the testimony of Ms. Stitz but finds that it is not entirely credible. While the record shows that the claimant has exhibited symptoms of inattention and disruptive behavior, the record also shows that these symptoms were significantly diminished with medication. An example of improvement . . . with medication can be found as early as May 1996 when his teacher reported only occasional straying from assigned tasks (Ex. 21, 25). Also, in September 1996 when the claimant was off his medication, he displayed extremely disruptive behavior including impulsiveness, restlessness, and easy distractibility. However, when his medication was resumed, his attitude improved and he was demonstrated [sic] an increase in responsibility (Exs. 36-37, 49). Accordingly, the undersigned finds that the allegations regarding the severity of the claimant's symptoms is not supported by the record.

(T 463)

The ALJ's decision to discredit Plaintiff's testimony in the January 17, 2001 decision is supported by substantial evidence. The ALJ's consideration of Plaintiff's testimony in the September

14

26, 2003 opinion was also proper. The Appeals Council remanded the case to allow Plaintiff an opportunity to respond to Dr. Pandya's interrogatories, not for lay witness credibility findings; therefore, there was no reason for the ALJ's September 26, 2003 opinion to restate a lay witness credibility finding included in an earlier opinion. Thus, it is reasonable to assume that the ALJ incorporated his previous rejection of Plaintiff's testimony into the September 26, 2003 decision. Further, the ALJ's finding that "the allegations regarding the claimant's impairments are credible only to the extent that they are consistent with the limitations found above" implies a rejection of Plaintiff's testimony. (T 28) Therefore, the court finds no error in the ALJ's consideration of Plaintiff's testimony at the August 25, 1999 administrative hearing.

Additionally, Plaintiff's argument that the ALJ improperly disregarded the opinion of Claimant's teacher, Ms. Tennyson, is without merit. The teacher's opinion upon which Plaintiff relies is a teacher/counselor questionnaire dated August 17, 1999. (T 406-09) Contrary to Plaintiff's contentions, the record reveals that the ALJ did consider Ms. Tennyson's questionnaire, not only in the September 26, 2003 decision but in the January 17, 2001 decision as well. (T 25, 462) In both decisions, the ALJ stated:

> Ellen Tennyson, claimant's teacher, stated that the claimant often had trouble staying on task and his actions appeared scattered. He often rushed through his work and did not remember whether he had finished a task. She also stated that the claimant related well with other children in his grade level but noted that the claimant was at least one year older than the other children were. Ms. Tennyson further stated that the claimant was able to articulate his desires and needs well. The claimant's self-care skills were described as fine with no apparent problems. Ms. Tennyson noted that the claimant tried hard but had difficulty functioning when he was not on his medication (Exhibit 48).

(Id.)

15

It is apparent that the ALJ did evaluate Ms. Tennyson's questionnaire in finding that Claimant was not under a disability. Therefore, Plaintiff's position on this issue is without merit.

### III.

The ALJ's decision is supported by substantial evidence and the proper legal principles. Therefore, the undersigned recommends that the decision of the Commissioner denying Plaintiff's application for SSI payments on behalf of Claimant be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1)   the decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2)   the Clerk of Court be directed to enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Dated: February 22, 2007**

ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. 636(b)(1).


Copies to:
District Judge
Counsel of Record